# MONTANA MINING COMPANY *v.* ST. LOUIS MINING AND MILLING COMPANY.

# MONTANA MINING COMPANY *v.* ST. LOUIS MINING AND MILLING COMPANY.

ERROR TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

Nos. 213, 214. Argued April 9, 1902.—Decided May 19, 1902.

When by the judgment of the Circuit Court each party to a cause is defeated in some part of his contention, and both take the case to the Circuit Court of Appeals, which affirms the judgment in favor of one party, and reverses it and remands the cause at the suit of the same party, the judgments of that court taken together cannot be regarded as final so far as the jurisdiction of this court is concerned, and writs of error from this court to review each judgment must be dismissed.

THIS was an action brought by the St. Louis Mining and Milling Company of Montana against the Montana Mining

Company in the Circuit Court of the United States for the District of Montana, to recover damages for trespass on a vein of rock, having its apex entirely within the described premises of plaintiff, and extracting therefrom and converting large quantities of valuable ore.

The cause was tried on a second amended and supplemental complaint, which was filed June 26, 1899, and is set forth in the record, but the original complaint and the amended complaint are not. The record contains the original summons. dated September 18, 1893, which ran against the Montana company; and sundry individuals, whose citizenship was not stated, though it appeared that they were served in Lewis and Clarke County, Montana, but who seem to have disappeared as parties in the progress of the cause, and who are not parties to the complaint contained in the record.

The first paragraph of the second amended and supplemental complaint alleged—

"That at the several dates hereinafter mentioned this plaintiff was, and now is, a corporation duly organized and existing under the laws of the then Territory (now State) of Montana, under the corporate name of St. Louis Mining and Milling Company of Montana, and as such was and is entitled to own, enjoy, and possess mining property in the said State, with all the rights, privileges, and immunities incident and appurtenant thereto; and that at said dates the said defendant, Montana Mining Company, Limited, was and now is a foreign corporation, incorporated under the laws of Great Britain, and, as such corporation, by virtue of its compliance with the laws of the then Territory (now State) of Montana, was and is entitled and authorized to do and transact business in said State."

The second paragraph alleged plaintiff " to be the owner of, entitled to, and in the actual possession and occupation of that certain quartz lode mining claim known as the St. Louis Quartz lode mining claim, and all the quartz, rock and ore and precious metals contained in any and all veins, lodes and ledges of mineral-bearing rock through their entire depth, the tops or apexes of which lie within the surface lines of the said fractional portion of said St. Louis lode mining claim, although

such veins, lodes or ledges may so far depart from a perpendicular in their downward course as to extend outside of the vertical side line of the surface of the said St. Louis Quartz lode mining claim," situated in the county of Lewis and Clarke, Montana, and more particularly described as follows: [Here followed a full description, concluding] "Save and except that portion thereof known as the thirty-foot strip or compromise ground which belongs to and is a part and portion of what is known and designated as the Nine Hour lode mining claim, which said fractional portion of said St. Louis lode mining claim is described as follows, to wit: [Here followed description].

The third and fourth paragraphs were as follows:

"III. That the said defendant, Montana Mining Company, Limited, is and was the owner of what is known and designated as the Nine Hour Quartz lode mining claim, situate and being east of the said St. Louis lode mining claim, and including the 30-foot strip or compromise ground aforesaid, and that the discovery, location and recordation of the said St. Louis lode mining claim and the United States patent therefor was made prior to the discovery, location and recordation and patent to the said Nine Hour lode mining claim.

"IV. That the dip of one of the veins having a portion of its top or apex inside of the surface location and patented ground of the said St. Louis mining claim is to the east and dips under and beneath the said Nine Hour lode mining claim, including the said thirty-foot strip or the compromise ground, which is a part and portion of the said Nine Hour Quartz lode mining claim, which said portion of said vein has its top or apex within the said St. Louis mining claim as follows, to wit: Commencing at a projected parallel end line of said St. Louis Quartz lode mining claim, at a point on the east side line thereof, between corners Nos. 1 and 2, extended vertically downward, whereat it passes through the hanging wall of said vein, lode, or ledge, at a point from which corner No. 1, being the northeast corner of said St. Louis Quartz lode mining claim, bears north 12 degrees 15 minutes east, distant 520 feet, where said hanging wall is disclosed at the surface by an upraise of said projected parallel end line, 5 feet west of the east side line of

said St. Louis Quartz lode mining claim ; thence, from where the said projected parallel end line passes through said east side line of said claim, and along the east side line of the said claim between corners Nos. 1 and 2, south, 21 degrees 15 minutes west, 512.7 feet to a point, being the intersection of the said east side line of said St. Louis Quartz lode mining claim, between corners Nos. 1 and 2, with the west line of the said thirty-foot strip hereinbefore described; thence south, 59 degrees 50 minutes west, 108 feet and along the west line of the said thirty-foot strip, to a projected parallel end line of said St. Louis Quartz lode mining claim, extended vertically downward, which passes through the hanging wall of said vein at the surface and at the crossing of the said hanging wall with the west line of the said thirty-foot strip.

"That it is also the owner of, in possession and entitled to the possession of an additional portion of the said apex of said claim lying to the south of the southern point hereinbefore mentioned, a distance of twenty-five feet, whereat the foot wall of the said vein passes out of the east side line of the said St. Louis lode mining claim.

"A map or plat showing the point at which the said vein enters said St. Louis lode mining claim as so hereinbefore described, and whereat the same departs therefrom upon the east line of said claim is hereto attached, marked Exhibit 'A,' and made a part of this complaint, and to which reference is made."

The Montana Mining Company answered June 30, 1899, in three paragraphs, the first admitting the allegations of paragraphs numbered one, two and three of the second amended and supplemental complaint; the second paragraph denying each and every other allegation thereof; and the third being as follows :

"And this defendant, further answering, says that the plaintiff is estopped from claiming any of the mineral found or which may hereafter be found in said thirty-foot strip or compromise ground, for that heretofore, to wit, on or about the seventh day of March, A. D. 1884, one Charles Mayger, who was then and there the predecessor in interest of plaintiff, made, executed and delivered to William Robinson, James Huggins and Frank P.

Sterling, who were and are the predecessors in interest of this defendant, a bond for a deed, wherein and whereby he covenanted and agreed to convey the said thirty-foot strip or compromise ground to the predecessors in interest of this defendant, or their assigns, with all the mineral therein contained, a copy of which said bond is hereto attached, marked Exhibit 'A,' and made a part of this answer. That thereafter and after the said Charles Mayger had obtained a United States patent for the whole of said St. Louis lode mining claim, including said thirty-foot strip or compromise ground, the said Mayger, in order to cheat and defraud this defendant, assumed to convey the said compromise ground to the above-named plaintiff. That thereafter this defendant demanded of and from the said plaintiff and from the said Mayger a deed for the said compromise ground in accordance with the terms and provisions of the bond aforesaid, and the said plaintiff and the said Mayger having refused and declining to make, execute or deliver such a deed, this defendant thereafter, and on or about the sixth day of September, A. D. 1894, commenced an action in the district court of the first judicial district of the State of Montana, within and for the county of Lewis and Clarke, wherein this defendant was plaintiff and the above-named plaintiff, together with the said Charles Mayger, were defendants, to compel the specific performance of the said bond for a deed hereinbefore mentioned and set forth; that thereafter such proceedings were had in said action as that on the first day of June, A. D. 1895, judgment was duly made and entered therein in favor of this defendant, the plaintiff therein, and against the plaintiff, defendant in said action, whereby, among other things, it was ordered, adjudged and decreed that the said bond hereinbefore mentioned be specifically performed, and that the defendant, the above-named plaintiff, make, execute and deliver to this defendant a good and sufficient conveyance in fee simple absolute, free from all encumbrances for the premises mentioned and described in the complaint in said action and in the bond hereinbefore mentioned; that in pursuance of said judgment, order and decree the said plaintiff, on or about the first day of July, A. D. 1895, made and executed a deed to this defendant of and for the said

premises and of all the mineral therein contained; and thereafter the said deed was duly delivered to this defendant, a copy of which said deed is hereunto annexed, marked Exhibit 'B,' and made a part of this answer. And this defendant avers that in and by the said proceedings and the said deed the said plaintiff is estopped from claiming any part of the said compromise ground or thirty-foot strip aforesaid, or any mineral contained therein."

Replication was filed, the cause tried by the court and a jury, a verdict returned in favor of plaintiff for $23,209, and judgment rendered thereon. To review this judgment the Montana company prosecuted a writ of error from the Circuit Court of Appeals for the Ninth Circuit, which writ was dated October 7, 1899, and the judgment was affirmed May 14, 1900. 102 Fed. Rep. 430. The writ of error in No. 213 was then allowed.

On the trial the St. Louis company was restricted by the Circuit Court to damages for ore taken north of what was designated as the 108-foot plane of the Nine Hour claim, but the company insisted on the right to recover for ore taken up to what was designated as the Nine Hour 133-foot plane. Accordingly the St. Louis company took out a cross writ of error from the Circuit Court of Appeals dated January 30, 1900, and that court reversed the judgment, October 8, 1900, and remanded the cause for a new trial as to the recovery sought for the conversion and value of certain ores between the planes designated as the 108-foot and 133-foot planes. 104 Fed. Rep. 664. The writ of error in No. 214 was then brought.

*Mr. W. E. Cullen* and *Mr. Charles J. Hughes, Jr.*, for plaintiff in error. *Mr. Edward C. Day, Mr. Aldis B. Browne* and *Mr. Alexander Britton* were on their brief.

*Mr. Thomas C. Bach* and *Mr. Arthur Brown* for defendant in error. *Mr. H. P. Henderson* and *Mr. E. W. Toole* were on their brief.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The St. Louis company recovered judgment in the Circuit

Court for the sum of $23,209.   This judgment was affirmed by the Court of Appeals, May 14, 1900, on the writ of error brought by the Montana company.

On the eighth of October, 1900, the Court of Appeals gave judgment on the cross writ of error of the St. Louis company in these words : " On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and the cause is remanded to said Circuit Court for a new trial as to damages alleged and recovery sought for the conversion and value of certain ores taken from the Drum Lummon vein on its dip between the planes designated as the 108-foot and 133-foot planes."

To review these judgments thus separately rendered, the Montana company sued out on the same day, October 24, 1900, two writs of error from this court, the records returned on which were filed December 18, 1900, and the cases docketed, and now numbered 213 and 214.

The St. Louis company moved to dismiss the writ of error in No. 213 on the ground that the jurisdiction of the Circuit Court was, according to plaintiff's statement of his own claim, "dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States," and the judgment of the Circuit Court of Appeals was, therefore, not reviewable on error under the sixth section of the judiciary act of March 3, 1891.   And at the same time, the St. Louis company moved to dismiss the writ of error in No. 214 on the additional ground that the judgment was not a final judgment.   This objection is, of course, well taken, and the writ of error must be dismissed.   But when, thereupon, the mandate of the Court of Appeals goes down to the Circuit Court, if in the meantime we have retained jurisdiction in No. 213, the result would be that part of the case would be pending in the court of original jurisdiction, and part in the court of last resort.   And should we differ with the Court of Appeals and reverse its judgment brought up in No. 213, our mandate would go to the Circuit Court, which would have been already directed to proceed as to part of the case on other prin-

ciples.  We do not mean to intimate in the slightest degree any conclusion on the merits, but only wish to indicate embarrassments which might arise if one and the same case is treated as two separate and independent cases.

By Rule 22 of this court appeals and cross appeals are heard together, and the practice is the same as to writs and cross writs of error.  Where there are cross appeals or cross writs of error in the Circuit Courts of Appeals in cases in which the decrees or judgments are made final in that court by statute, and the case is brought here on certiorari, we consider only the errors assigned by petitioner, unless a cross writ of certiorari is applied for and allowed.  *Hubbard* v. *Tod*, 171 U. S. 474.

In this case two writs of error were sued out by the Montana company because there were two judgments rendered below, but the records on both constitute the record in one and the same case, as both writs of error in the Court of Appeals ran to the same judgment of the Circuit Court.

It is said that the complaint described two sections of the vein, one lying north of the 108-foot plane and one between the 108 and 133-foot planes, and that as they were described separately this was equivalent to two counts on distinct causes of action.  But we do not understand that this is so, for the complaint is complete in itself, and a single trespass may be committed on several closes and alleged in a single count.  Moreover, although set up in two counts, if there were no misjoinder, which is not pretended here, the recovery would be entire and would require an entire judgment.  And as the trial court sustained a recovery as to one part of the vein and not as to the other, and both parties took bills of exceptions, and resorted to the appellate tribunal, we do not think that the judgment as rendered could be retained as a judgment and a retrial had as to so much of the claim as was disallowed.  Our attention is not called to any act of Congress or to any rule of practice which authorizes this to be done, nor to any statute or decision of the courts of Montana to that effect, if, indeed, the Federal courts would be obliged to follow such practice if it existed.  And the difficulty of the situation is illustrated by the suggestion of counsel that this one action should be regarded

as two actions, over one of which the ground of jurisdiction of the Circuit Court was dependent solely on diverse citizenship, and over the other, not.

But we are of opinion that the judgment of the Court of Appeals on the writ of error prosecuted by the St. Louis company operated to reverse the prior judgment of affirmance, inasmuch as the court in terms reversed the judgment of the Circuit Court, although imposing a limitation on the extent of the new trial awarded. Even if the Court of Appeals had power to impose that limitation, the issue so reserved deprived the first judgment of finality so far as our jurisdiction is concerned. *Covington* v. *First National Bank,* 185 U. S. 270.

The answer to the complaint consisted of a general denial and an affirmative defence that the plaintiff had granted by contract, and afterwards by deed enforced by a decree of court, a thirty-foot strip along a portion of its side line, and the trial court held that the plaintiff could not recover for the 25-foot section between the two planes, but that it could recover northerly from the 108-foot plane. Each party was defeated in some part of its contention, and each party took the case to the Court of Appeals, but the decision of that court left a part of the case undisposed of in the court below. The judgment of reversal being before us in No. 214, we are not compelled to ignore its effect on the judgment in No. 213, and to entertain one writ of error while dismissing the other. *Butler* v. *Eaton,* 141 U. S. 243; *Kimball* v. *Kimball,* 174 U. S. 158; *Mills* v. *Green,* 159 U. S. 654; *Chicago & Vincennes Railroad* v. *Fosdick,* 106 U. S. 84.

When these writs of error were taken out the judgment first rendered had ceased to be final by the operation of the second judgment, which was itself not final, and the result is that both must be dismissed.

*Writs of error dismissed.*

Mr. Justice Gray did not hear the argument and took no part in the decision.